

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

### No. 08-25-00257-CV

---

St. David's Healthcare Partnership, L.P., LLP d/b/a St. David's Medical Center,
Appellant

v.

Savannah Burns, Appellee

---

On Appeal from the County Court at Law No 2
Travis County, Texas
Trial Court No. C-1-CV-25-000757

---

## MEMORANDUM OPINION[1]

This interlocutory appeal addresses a patient's claim against a hospital after a ceiling tile

struck her during her hospital stay. Appellee Savannah Burns sued Appellant St. David's

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

Healthcare Partnership, L.P., LLP d/b/a St. David's Medical Center (St. David's) for injuries she sustained. St. David's moved for dismissal, arguing that because Burns's claim is a health care liability claim (HCLC) under the Texas Medical Liability Act, dismissal was statutorily mandated due to Burns's failure to file the required expert report under § 74.351 of the Texas Civil Practice and Remedies Code. St. David's challenges the trial courts denial of its dismissal motion and request for attorney's fees and costs. Tex. R. Civ. P. 74.351. Because we conclude that Burns's claim is subject to the expert report requirement, we reverse and render.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Burns was admitted to St. David's on or about July 21, 2024, after complaints of pre-term contractions. She was treated in labor and delivery room 18 and was administered an epidural. While resting under epidural anesthesia in preparation for the delivery of her child, a ceiling tile above her hospital bed fell and allegedly struck her. It was alleged that an HVAC leak caused the ceiling tile to fall.

Burns filed suit on February 4, 2025, asserting a "premises liability" claim against St. David's for physical injury and emotional distress. She alleged that St. David's "failed to properly inspect and maintain the labor and delivery room, including the HVAC system and ceiling tiles[;]" "failed to properly monitor the room for safety risks and take appropriate corrective measures, which exposed [her] to the potential dangers of mold, toxins, and physical injury[;]" "failed to adequately document and respond to [her] complaints about the potential risks and her health concerns following the incident[;]" "failed to recognize the potential impact of the physical injury and weight loss on [her] health and the health of her unborn baby, neglecting to provide proper medical care and oversight during her stay[;]" and "failed to provide proper psychological care or support to [her] after the incident, neglecting to recognize the lasting emotional and psychological

2

impact caused by the event, which has led to ongoing anxiety and distress." Burns, however, did not file an expert report within 120 days of filing her petition. Based on this, St. David's moved for dismissal under § 74.351 of the Texas Civil Practice and Remedies Code.

In response, Burns argued that her claim is not a HCLC subject to the expert report requirement and instead is a "classic premises defect case" because it "arises from a dangerous physical condition on the premises—namely, a water-damaged ceiling tile that detached and struck Plaintiff while she was resting in a hospital room. The incident involves no medical decision-making, no treatment plan, and no departure from accepted health care standards." She further asserted "[t]he alleged negligence—the failure to maintain ceiling infrastructure in a safe condition—is *not a task performed for the purpose of protecting patients from medical harm*[,]" and that "[w]hile [Burns] was physically located in a hospital and receiving care generally, the source of the injury—a falling ceiling tile—has no substantive nexus to health care, does not involve any medical judgment, and does not require expert testimony."

Following a hearing, the trial court denied St. David's motion to dismiss. This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(9) (authorizing appeal from an interlocutory order of denial of the relief sought by a motion under § 74.351(b)).

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We ordinarily review a trial court's ruling on a motion to dismiss under § 74.351(a) for an abuse of discretion. *See Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 343 (Tex. 2024) (per curiam). However, whether a pleaded claim is actually a health care liability claim is a matter of statutory construction reviewed de novo. *Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). "In construing a statute, our aim is to determine and give effect to the Legislature's intent, and we begin with the plain and common meaning of the statute's words." *Id*.

3

(internal citations and quotation marks omitted). If the statute is unambiguous, "we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results." *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "We further consider statutes as a whole rather than their isolated provisions." *Id*. at 439.

The Texas Medical Liability Act (TMLA)[2] defines a HCLC as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). According to this definition, a HCLC consists of three elements: (1) the defendant must be either a health care provider or a physician; (2) the plaintiff's claim must concern treatment, lack of treatment, or a departure from the accepted standards of care on one of four predicate grounds (the Four Breaches); and (3) the conduct complained of in element two proximately caused the plaintiff's injury or death. *See id*.; *Williams*, 371 S.W.3d at 179–80. The Four Breaches of the second element include departures from the accepted standards of (a) medical care, (b) health care, (c) safety, and (d) professional or administrative services directly related to health care. Tex. Civ. Prac. & Rem. Code § 74.001(a)(13).

If a plaintiff asserting a HCLC fails to serve the defendant with an expert report on liability or causation within 120 days of the suit's inception, the defendant is entitled to dismissal with prejudice and attorney's fees and costs. Tex. Civ. Prac. & Rem. Code § 74.351(b), (j).

---

[2] The TMLA is codified at chapter 74 of the Texas Civil Practice and Remedies Code. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 864–82 (codified at Tex. Civ. Prac. & Rem. Code ch. 74).

# III. ANALYSIS

In its first issue, St. David's argues that because Burns asserted a HCLC, the trial court abused its discretion in denying its motion to dismiss based on Burns's failure to serve an expert report as required by § 74.351. In its second issue, St. David's contends that the trial court further abused its discretion by denying its request for attorney's fees and costs as required by § 74.351. Burns insists that her claim is strictly one of premises liability and that the expert report requirement does not apply. We disagree.

The parties do not dispute that St. David's is a health care provider or that the alleged acts or omissions proximately caused Burns's injuries. The only dispute is whether Burns's claim "concern[s] treatment, lack of treatment, or a departure from the accepted standards of medical care, or health care, or safety"—the second element of a HCLC. *See Williams*, 371 S.W.3d at 179–80.

The Texas Supreme Court has observed that "[t]he broad language of the TMLA evidences legislative intent for the statute to have expansive application." *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012). A "presumption that a claim is an HCLC" applies when the claim "is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Id*. In determining whether a claim is an HCLC, courts examine the gravamen of the claim. *Williams*, 371 S.W.3d at 178 (providing that courts must look to the "gravamen of the claim . . . against the health care provider"). We are not bound by the characterization of the pleaded claim. *See Buck v. Blum*, 130 S.W.3d 285, 291 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Rather, the analysis focuses on the facts underlying the claim. *Univ. of Texas Med. Branch at Galveston v. Jackson*, 598 S.W.3d 475, 479 (Tex. App.—Houston [14th Dist.] Mar. 26, 2020, pet. denied). Courts consider the "entire court

record" and the overall context of the plaintiff's suit, including the factual allegations in the pleadings, the motion to dismiss, the response, and any relevant evidence properly admitted. *See Loaisiga*, 379 S.W.3d at 258–59. In doing so, we examine the substance rather the form to determine whether the alleged conduct falls within the TMLA's scope. *Id*. "A plaintiff cannot dodge the TMLA's strictures through artful pleading; where a pleaded tort or contract claim constitutes an HCLC, the TMLA's procedural requirements apply regardless of how the claim is recast." *E. El Paso Physicians Med. Ctr., L.L.C. v. Vargas*, 511 S.W.3d 172, 176 (Tex. App.—El Paso 2014, pet. denied).(citing *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005)). "[C]laim splitting" is not permitted under the TMLA. *Yamada v. Friend*, 335 S.W.3d 192, 195–96 (Tex. 2010). "Where all claims arise from the same nucleus of operative fact, and some pleaded claims are HCLCs, then the TMLA's procedural requirements must be followed or else all claims arising from the same fact scenario must be dismissed." *Vargas*, 511 S.W.3d at 176.

With this framework in mind, we turn to whether Burn's claim concerns treatment, lack of treatment, or a departure from the accepted standards of medical care, or health care, or safety. St. David's argues that Burns's claim is a HCLC and "falls under the 'safety' component of a health care liability claim" because she alleged that St. David's owed her a "duty to provide a safe environment during her stay . . . *particularly* in the labor and delivery room where [she] was under the *hospital's care and supervision*." Burns responds that her claim sounds in premises liability because her pleadings do not allege a departure from medical or health care standards and the "duty alleged is the ordinary duty owed by a premises owner to maintain the -property in a reasonably safe condition."

The Texas Supreme Court has ruled that for a safety standards-based claim to be an HCLC, "there must be a substantive nexus between the safety standards allegedly violated and the

provision of health care." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015). "The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id*. at 505. To resolve that issue, we examine the following non-exhaustive factors:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id*.

Here, the answer to factor four is "no," and factor six does not apply. The remaining factors weigh in favor of classifying the claim as a HCLC. Burns was admitted for pregnancy, was administered an epidural, and was resting in preparation to deliver her child in her assigned labor and delivery room at St. David's. While she remained under St. David's care as a patient, a ceiling tile fell on her as she slept. Burns argues that she "was resting in the room. She was not undergoing a medical procedure, receiving treatment, being examined, or interacting with medical staff when

7

the ceiling tile fell." In its dismissal motion, and on appeal, St. David's argued that "she was sleeping, she was actively receiving treatment or in preparation for delivery and under the supervision of St. David's health care providers." We agree.

In her petition, Burns alleged the following breaches:

Defendant owed Plaintiff a duty to provide a safe environment during her stay at St. David's Hospital, particularly in the labor and delivery room where Plaintiff was under the hospital's care and supervision.

Defendant breached this duty by failing to ensure that the hospital premises, including the HVAC system and ceiling tiles, were properly maintained and free from hazards that could harm Plaintiff and her unborn child. The failure to address the malfunctioning thermostat and known risks associated with the ceiling panel directly contributed to the incident.

Defendant further breached their duty by failing to take adequate precautions to address known risks within the room, such as the potential for ceiling tiles to fall due to water damage from the HVAC leak.

Defendant also breached their duty by failing to appropriately respond to Plaintiff's health concerns following the incident, including the lack of documentation regarding Plaintiff's bruising and weight loss, which may have exacerbated her physical condition and posed risks to both Plaintiff and her unborn child.

Defendant had a duty to properly investigate the potential presence of toxins or mold in the room after the leak and tile fall, but failed to conduct a thorough investigation or adequately communicate potential risks to the Plaintiff. This failure placed Plaintiff at risk for further harm from exposure to stagnant water and contaminants.

Additionally, Defendant failed to provide proper psychological care or support to Plaintiff after the incident, neglecting to recognize the lasting emotional and psychological impact caused by the event, which has led to ongoing anxiety and distress.

Burns not only alleged that St. David's failed to provide a safe environment during her hospital stay, but she also alleged that St. David's failed to adequately respond to her patient complaints and injuries, to document and address her physical symptoms, and to provide psychological care— all allegations that directly implicate her treatment as a patient.

The Texas Supreme Court has recognized that "[t]he obligation of a health care facility to its patients is not the same as the general duty a premises owner owes to invitees," explaining that although "[p]remises owners similarly owe a duty of care to their residents and invitees . . . the duty is of ordinary care with no general medical duty to diagnose and treat their residents." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 850–51 (Tex. 2005). The care Burns received "necessarily required that the hospital take action to ensure her safety at all times in which she was a patient at the facility." *Little v. Riverside Gen. Hosp. Inc.*, No. 14-14-00797-CV, 2016 WL 208142, at *3 (Tex. App.—Houston [14th Dist.] 2016). "Protection of patient safety— including maintenance of hospital grounds to prevent injury—is part and parcel of the provision of health care[.]" *Id*. Burns's claim alleged a departure of a hospital to protect the health and safety of its patients. *See Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392, 394 (Tex. 2011) (concluding that premises liability claim brought by a resident of a nursing home who was fatally injured by spider bite was ultimately a HCLC because it alleged a departure from the "fundamental patient care required of a nursing home . . . to protect the health and safety of the residents."); *see also Little v. Riverside Gen. Hosp. Inc.*, 2016 WL 208142, at *2 ("We note that Riverside's status as Little's health care provider also imposes on it a duty to maintain her safety, the breach of which can be the crux of a health care liability claim under the TMLA.").

Burns's allegations that St. David's failed to provide a safe environment during her hospital stay as a patient and failed to provide her with appropriate medical care following the incident assert that St. David's did not comport with the required standard of patient care. We conclude that, although pleaded as a premises liability claim, Burns alleged "violations of safety standards directly related to the provision of health care," including protecting patients from injury during their hospital stays. *See Ross*, 462 S.W.3d at 502; *see also Jackson*, 2020 WL 1480166 at 479

9

("[A] claim can be a health care liability claim regardless whether the plaintiff's petition explicitly cites the TMLA or alleges a breach of any accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care."). Because Burns alleged an HCLC, she was required to file an expert report within 120 days of filing suit and her failure to do so mandated dismissal under § 74.351. The trial court abused its discretion by denying St. David's motion to dismiss. Tex. Civ. Prac. & Rem. Code § 74.351(b)(1–2) (providing that when "an expert report has not been served within the period specified . . . the court, on the motion of the affected physician or health care provider, *shall* . . . enter an order that . . . dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.") (emphasis added). Issue One is sustained.

Because Burns failed to file the statutorily mandated expert report, the trial court was also required to award St. David's attorney's fees and costs. Tex. Civ. Prac. & Rem. Code § 74.351(b)(1) (providing that when "an expert report has not been served within the period specified . . . the court, on the motion of the affected physician or health care provider, *shall* . . . enter an order that . . . awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider.") (emphasis added). The trial court abused its discretion by failing to do so. Issue Two is sustained.

## IV. CONCLUSION

We reverse the trial court's order, render judgment dismissing Burns's claim with prejudice, and remand to the trial court to assess attorney's fees and costs.


MARIA SALAS MENDOZA, Chief Justice


10

July 10, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.